*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2020-119

JULY TERM, 2020

| | |
|---|---|
| In re R.C., V.C., A.N., W.W., J.B., Juveniles (R.B., Mother\*) | APPEALED FROM:<br><br>Superior Court, Washington Unit, Family Division<br><br>DOCKET NOS. 48/49/50/51-3-19 Wnjv & 67-4-19 Wnjv<br><br>Trial Judge: Kirstin K. Schoonover |

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights with respect to her five children.[*] We affirm.

Mother does not challenge any of the family division's findings, which may be summarized as follows. R.C., V.C., A.N., W.W., and J.B. were born in May 2008, June 2011, July 2015, September 2017, and April 2019, respectively. Soon after mother moved from Connecticut to Vermont with her older children in 2015, the Department for Children and Families (DCF) received multiple reports pertaining to the family and investigated concerns regarding physical and sexual abuse, homelessness, inadequate supervision, and neglect. DCF opened two family-support cases with mother, one between September 2015 and April 2016, and another between February 2017 and May 2018.

In March 2019, mother brought R.C. and V.C. to a pediatrician for a wellness check and informed the pediatrician that her children were being abused by her partner. In a separate interview with the pediatrician, R.C. and V.C. reported that mother, mother's partner, and her partner's former partner, all of whom were living with the children, were subjecting the children to physical and sexual abuse, chronic neglect, and domestic violence. Believing that the children had been exposed to long-term abuse and fearing for their safety, the pediatrician called police. Mother was arrested and charged with two counts of aggravated sexual assault on a child, two counts of lewd and lascivious conduct with a child, and two counts of aiding in the commission of cruelty to a child. During mother's interview with police, she described horrific acts of physical and sexual abuse perpetrated on the children. Mother admitted being present during these acts and acknowledged that she could have reported the abuse, but she stated that she was afraid to do so.

---

[*] The family division also terminated the parental rights of the fathers of R.C., A.N., W.W., and J.B. The court indicated that it would grant conditional custody of V.C. to her father.

On March 22, 2019, the family division granted the State's request for an emergency care order, and the four older children were placed in DCF custody. The court found that mother had participated in the sexual abuse perpetrated against the children. DCF placed the children with separate foster families, all of whom testified at the termination hearing that the children came into their care thin, pale, and ravenously hungry. The family division continued DCF custody at a March 25, 2019 temporary care hearing. J.B. was placed in DCF custody following his birth in April 2019.

On July 26, 2019, mother stipulated that the children were in need of care and supervision (CHINS). In doing so, she admitted that she and her partner (J.B.'s father) had subjected the two older children to severe physical and sexual abuse, including forcing the children to engage in sexual acts with each other.

On October 18, 2019, the State filed petitions to terminate mother's parental rights at initial disposition. Because the petitions were pending, DCF included action steps for mother to take, subject to court approval, including gaining insight through mental-health treatment of her role in the abuse perpetrated on the children, engaging in a psychosexual assessment, working with a domestic-violence specialist, demonstrating her understanding of the children's need for stability, obtaining stable housing, and doing restorative work with the children's clinician or trauma specialist to help her accept responsibility for her part in abusing the children. The disposition/termination hearing was held over three days in January and February of 2020. At the time of the hearing, mother had been incarcerated for approximately one year, and the criminal charges stemming from her abuse of the children were still pending.

In a March 17, 2020 order, the family division granted the State's petitions and terminated mother's parental rights with respect to all five children. In analyzing the four best-interest criteria set forth in 33 V.S.A. § 5114(a), the court concluded, in part, that: (1) mother was always the primary parent of the four older children, but even before the sexual abuse she participated in with R.B.'s father, her ability to care for the children was "extremely inadequate," as she exposed the children to homelessness, domestic violence, physical abuse, and chronic neglect; (2) after mother began living with R.B.'s father, the two of them subjected the children to "horrific abuse," and mother's relationship with the children was "horribly dysfunctional"; (3) the children are well-adjusted to their respective foster homes, schools, and communities; (4) mother will not be able to resume her parental duties within a reasonable period of time because: "[s]he remains incarcerated on serious pending criminal charges due to horrific sexual and physical abuse on her children"; she is foreclosed from having any contact with the children by court order, and even in the absence of that condition DCF would not recommend contact between mother and children based on the recommendation of the older children's therapist; her insight into the nature of the abuse and the toll it has taken on the children is "woefully inadequate"; she has "limited" empathy for, and understanding of, the trauma the children endured for over two years; and she is not capable of achieving the "long and steep" action steps necessary for her to see her children again; and (5) given the children's anger at mother, it seems unlikely that mother and the children would ever be able to engage in the restorative work required for mother to play any future role in the children's lives. The court acknowledged that terminating parental rights at initial disposition should be done only in rare situations but concluded that it was warranted in this case, given the extent of the physical and sexual abuse and chronic neglect that the children suffered while in mother's care

and the overwhelming evidence that mother would not be able to care for the children within a reasonable period of time from their perspective.

On appeal, mother argues that the family division: (1) misapprehended her argument, and its legal import, concerning her efforts to address the action steps DCF recommended for her; and (2) failed to individually examine the anger that each child felt towards her.

Regarding the first argument, mother asserted at the termination hearing that she had completed through prison programming many of the action steps DCF recommended for her and that her imprisonment prevented her from completing the remaining action steps. In a brief footnote in its termination decision, the court stated that it was not required to consider at initial disposition whether stagnation had occurred after the filing of the CHINS petitions with respect to mother's ability to care for the children, but that even if it were, it would find stagnation because of mother's "shocking lack of insight into the abuse the children suffered and her role in perpetrating such abuse." According to mother, the court failed to understand that her assertions regarding the action steps she had completed in prison and her inability to complete the others due to her imprisonment were not aimed at countering any claim of stagnation, but rather were directed at demonstrating both that she had made progress towards being able to resume care of the children within a reasonable period of time and that she had been denied essential services for reasons beyond her control. In mother's view the court's misapprehension of her argument undermined its conclusion that she was incapable of achieving the action steps necessary for her to be able to see her children again.

We find no merit to this argument. The family division's unchallenged extensive findings —including those concerning the significant trauma the children suffered while in mother's care, the uncertainty regarding mother's availability due to serious, unresolved pending criminal charges stemming from her abuse of the children, and mother's continued lack of insight into her role in the abuse and the trauma it inflicted on the children—overwhelmingly support the court's conclusion that mother will not be able to resume her parental duties within a reasonable period of time from the children's perspective. As for mother's suggestion that she was denied essential services due to factors beyond her control—most significantly, her imprisonment—"our case law makes clear that a parent is responsible for the behavior that leads to incarceration and for the consequences that come with such incarceration." In re D.S., 2014 VT 38, ¶¶ 20, 26, 196 Vt. 325.

Mother also argues that the family division committed reversible error by failing to individually analyze the anger each child felt toward mother. We find no basis to reverse the court's termination order. The court noted that the children's anger toward mother grew as they began to feel safe in their foster homes. The court explained that R.C. and V.C. "in particular" were deeply angry at mother and had not expressed any desire to see her or have a relationship with her. The court also noted that all the children, except J.B., exhibited traumatized behaviors due to their abuse, which led to their therapist recommending that they not see mother. The court further stated that the children, "particularly" R.C., were furious at mother for the role she played in the abuse they suffered, and that it was unlikely mother would ever be able to engage in the restorative work necessary for her to be part of their lives again. Finally, the court noted that the children do not want to see mother and do not seek her emotional support or affection.

The court recognized that principally R.C., and to a lesser extent V.C., had demonstrated anger toward mother concerning her abusive behavior towards them. The fact that the court at times spoke of the children in general in describing that anger does not undercut its conclusions regarding the statutory best-interest criteria, which overwhelmingly support its termination order.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Beth Robinson, Associate Justice


_____
Karen R. Carroll, Associate Justice